IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| STEVEN DINI and ERIC CLENNON, on Behalf of Themselves and Others Similarly Situated, | § § § § | |
| Plaintiffs, | § § | |
| V. | § § | CIVIL ACTION NO. A:06-ca-1009LY |
| ZENITH CAFÉ CORPORATION d/b/a CHEZ ZEE, | § § § § | |
| Defendant. | § § | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Defendant, Zenith Café Corporation d/b/a Chez Zee ("Chez Zee") and, subject to its pending Motion to Decertify the Conditionally Certified Collective Action, files this Motion for Summary Judgment, and would respectfully show the following:

### I.
### INTRODUCTION

1. Plaintiffs Steven Dini and Eric Clennon are former employees of Chez Zee who have filed suit on behalf of themselves and 11 other former employees. They allege that Chez Zee operated a tip pool that violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*

2. Chez Zee admits that it operates a tip pool but denies that the tip pool violates the FLSA. Moreover, Plaintiffs have admitted that the tip pool is legitimate, and that they have "no complaint" about the tip pool.

# II.
# STATEMENT OF FACTS

## A. Plaintiffs are Former Employees Who Allege an Invalid Tip Pool.

3. The Plaintiffs are former "tipped" employees of Chez Zee who were paid in accordance with the federal sub-minimum hourly wage rate that employers are permitted to pay to employees who receive and keep their tips. Plaintiffs allege that Chez Zee should not have been permitted to pay them at the federal sub-minimum wage rate because Chez Zee operated an "invalid tip pool." Specifically, Plaintiffs allege:

> Defendant violated the FLSA by requiring its servers to participate in an invalid tip pool at its restaurant "Chez Zee", whereby servers were required to pay a percentage of their tips to Defendant which would then distribute that portion of tips to employees who do not customarily and regularly receive tips…

*See* Plaintiffs' First Amended Original Collective Action Complaint at ¶ 3.

4. The nature of what Plaintiffs have **actually pled** is important because they have effectively admitted, under oath, that their claims as pled are without merit. Thus, it is anticipated that Plaintiffs may seek to avoid summary judgment by re-characterizing their claim. The pleading excerpt above refers specifically to Chez Zee's "tip pool," and it also describes the essential elements of a tip pool; i.e., the compulsory retention of a percentage of an employee's tips into a pool maintained by the employer, and the employer's re-distribution of the proceeds of that pool to other employees. *Id.* Any possible doubt that this lawsuit is about Chez Zee's tip pool, or about the alleged grounds for why that tip pool is invalid or unlawful is dispelled when, later in the amended complaint, Plaintiffs allege the following:

> Plaintiffs are former waiters and/or servers that worked at Chez Zee. Defendant paid Plaintiffs less than minimum wage ($2.13) while they worked as waiters/servers – taking advantage of a tip credit, which allowed Defendant to include in its calculation of Plaintiffs' wages a portion of the amounts received as tips. Defendant required Plaintiffs and its other servers to contribute a percentage of their total sales during each shift (2-3%) to a tip pool controlled by Defendant. Defendant would then

2

distribute the tip pool to kitchen staff and other employees who are not considered "customarily tipped employees."

*Id.* at ¶ 10.

**B.    The Nature and Operation of Chez Zee's Tip Pool.**

5.     There is no dispute that Chez Zee does, in fact, operate a "tip pool." *See* the Affidavit of Sharon Watkins ("Watkins Aff.") attached hereto as Exhibit "A," at ¶¶ 2-5.[1] Specifically, Chez Zee retains a portion of the tips that are received by servers, and redistributes those retained tips to table bussers. *Id. See also* the Excerpts from the Deposition of Eric Clennon ("Clennon Depo") attached hereto as Exhibit "B," at pp. 42-47, 74, 77 & 82 and the Excerpts from the Deposition of Steven Dini ("Dini Depo") attached hereto as Exhibit "C," at pp. 62 & 79-80. Specifically, at the conclusion of each shift, every server is paid, in cash, an amount equal to all of his or her credit card and cash tips that had been earned during that shift,[2] **less** an amount that is retained for the "tip pool." *See* Watkins Aff. at ¶ 5. The retained amount is calculated for each server as 1.5% of the total sales made by that server during that shift. *Id.* The retained amounts for each server are then pooled together, and are re-distributed, in equal cash payments, to all of the table bussers who worked that shift. *Id.*

6.     Contrary to what is alleged in Plaintiffs' complaint, **only the servers had a portion of their tips retained and contributed to the tip pool, and only the table bussers received money from the tip pool.** *Id.* at ¶¶ 3, 6 & 7. The bartenders did not have any portion

---

[1] Pursuant to the Local Rules of the United States District Court for the Western District of Texas, the evidentiary exhibits supporting this motion are contained in, and shall be filed as, an Appendix to this Motion.

[2] Most transactions in the restaurant are by credit card, and the credit card tips are recorded automatically. At the end of each shift, each server is required to report, or declare, the amount of cash tips they received. The total of the credit card and cash tips are then paid to the server in cash.

of their tips retained and contributed to the tip pool, and the kitchen staff, expeditors, bartenders, and silverware/napkin rollers, did not receive any money from the tip pool. *Id.* at ¶ 6.[3]

7. Not only have Plaintiffs failed to adduce any evidence that the tip pool proceeds are distributed to anyone other than table bussers, they agree with that proposition. Both Dini and Clennon confirmed, under oath, that the tip pool, or what they sometimes called the "tip-out" was only "for bussers." *See* Clennon Depo at pp. 42-47, 74, 77 & 82. *See also* Dini Depo at pp. 62 & 79-80. Also, Clennon testified that the Plaintiffs do not – notwithstanding the pleading that has been filed on their behalf – have any complaint about the tip pool that is operated by Chez Zee. Specifically, he testified as follows:

> Q: Just so I'm clear, you don't have any dispute or complaint about sharing tips with the bussers?
>
> A: No.
>
> Q: That's correct, my statement?
>
> A: That's correct.
>
> Q: Okay, and the bussers are the folks who are the beneficiaries of the – of the tips that Chez Zee withheld and paid directly to them; withheld from the tips that you received from your tables, correct?
>
> A: Yes.

*See* Clennon Depo at p. 74.

**C.   Plaintiffs' Real Complaint Concerns Their Informal and Voluntary Sharing of Tips with Other Co-Workers.**

8. Clennon, in fact, testified that his only real complaint has nothing to do with Chez Zee's tip pool, and concerns his apparent regret about having shared, out of his own pocket, a

---

[3] Dini was, at all times, employed as a bartender, but believes – erroneously – that a portion of his tips were retained for the table busser tip pool. For purposes of this motion, this Court need not resolve that issue because there is nothing unlawful about requiring tipped bartenders to contribute to a table busser tip pool.

4

HOU:2756633.4

portion of the tips that he received with various co-workers.[4] *Id.* at pp. 44-47, 77 & 82. As described by Clennon, he and others servers and, maybe even bartenders, would get paid their tips each shift by Chez Zee, and then would take some of that money out of their own pockets, after being paid by Chez Zee, and would share that money with other co-workers. *Id.* Chez Zee was aware of this personal practice by some of its servers, but did not retain or distribute the money in question, never mandated that such personal "tips" be made, and had no control over the practice. *See* Watkins Aff. at ¶¶ 8-11. The personal, and informal nature of these transactions was described by Clennon when he testified as follows:

> Q: How about with the expeditor who was on duty that night, Javvier or Abraham?
>
> A: Yes.
>
> Q: Okay. Again, would you – would you deliver that personally out of your own pocket?
>
> A: I would deliver it to them, yes.
>
> Q: Out of the cash that was in your pocket?
>
> A: Yes.

*See* Clennon Depo at p. 46.

9. Clennon also confirmed that any tips he gave to silverware/napkin rollers occurred not because of any tip pool operated by Chez Zee, but because he "would come out of his own pocket to give them a tip." *See* Clennon Depo at p. 77. Indeed, with respect to his practice of sharing his tips with the other employees, Clennon confirmed that

    a. Chez Zee did not retain any amount from his earned tips to be redistributed to expeditors or rollers (*Id.* at p. 77);

    b. he would receive all of his tips (less the amount retained for the tip pool for bussers) from Chez Zee at the end of each shift, and then

---

[4] Clennon specifically identified bartenders, expeditors and napkin rollers as the beneficiaries of this largesse. Since the practice was informal and occurred after work between co-workers, there is no record or other means to verify what he claims.

5

he would give tips to the bartender, expeditor and roller (*Id.* at pp. 42-46 & 53);

c. no manager from Chez Zee "ever" told him that he "had to tip either of those two positions, the expeditor or the silverware roller" (*Id.* at p. 91); and

d. he never complained to any Chez Zee manager about his practice of sharing his tips with the expeditor and/or the roller (*Id.* at pp. 82-83).

10. Dini likewise confirmed that his own claimed participation in the practice of sharing a portion of his tips with other co-workers; including fellow bartenders, expeditors and napkin rollers; involved taking money out of his own pocket, after he had been paid his tips by Chez Zee. *See* Dini Depo at pp. 79-80.

## III.
## ARGUMENT AND AUTHORITIES

**D. Tip Pools Under the FLSA.**

11. The FLSA permits an employer to pay "tipped employees" at a sub-minimum wage rate that is less than the standard minimum wage so long as the tipped employees are engaged in an occupation in which they customarily and regularly receive more than $30 per month in tips, and receive no less than the standard minimum wage when tips and hourly wages are added together. *See* 29 U.S.C. § 203(m). *See also Kilgore v. Outback Steakhouse*, 160 F.3d 294, 298 (6th Cir. 1998). The FLSA also requires that such tipped employees be allowed to keep all of their tips, but expressly states that this shall not be "construed to prohibit the pooling of tips among employees who customarily and regularly receive tips." *See* 29 U.S.C. § 203(m).

**E. Chez Zee's Tip Pool was Permissible and Legal.**

12. It is undisputed that Chez Zee operates a tip pool. The issue raised by the complaint on file in this case is whether Chez Zee's tip pool – whereby Chez Zee redistributed a small percentage of servers' tips to the table bussers – was permissible under the FLSA. The

6

answer comes directly from the applicable regulations, the relevant case law, and from the testimony of Plaintiffs.

13. It is well-established that it is legal and permissible to operate a tip pool whereby waiters are required to "give a portion of their tips to the busboys." *See* 29 CFR § 531.54.[5] *See also Myers v. The Copper Cellar Corp.*, 192 F.3d 546, 549 (6th Cir. 1999) (citing to 29 CFR § 531.54 and stating that "bus boys . . . who customarily do not directly receive diner-donated gratuities may properly be included in an employer-mandated tip pool."); *Kilgore, supra* at 160 F.3d 301; *Marshall v. Krystal Co.*, 497 F.Supp. 9, 13 (E.D. Tenn. 1978). Perhaps because of the clarity of the law, Plaintiffs herein did not actually challenge or dispute the legality of Chez Zee's tip pool benefiting table bussers during their depositions. Rather, and as noted above, Clennon unequivocally testified that Plaintiffs do **not** "have any dispute or complaint about sharing tips with the bussers." *See* Clennon Depo at p. 74.

14. Notwithstanding what is alleged in Plaintiffs' pleading, there is no dispute that Chez Zee's tip pool **only** benefits the table bussers. Indeed, whereas Plaintiffs' pleading alleges that "Defendant would then distribute the tip pool to kitchen staff and other employees who are not considered 'customarily tipped employees,'" Dini and Clennon both testified that only table bussers are beneficiaries or recipients of the tip pool operated by Chez Zee. *See* Clennon Depo at pp. 42-47, 74, 77 & 82; Dini Depo at pp. 62 & 79-80. That testimony is entirely consistent with, and confirms, the testimony of Chez Zee's managers that Chez Zee operates a tip pool whereby a portion of the tips received by servers are retained and redistributed to the table bussers **only**, and that no portion of the tips retained by Chez Zee are redistributed to any other employees. *See* Watkins Aff. at ¶¶ 2-7.

---

[5] That regulation expressly states that "both the amounts retained by the waiters and those given to the busboys are considered tips of the individuals who retain them" for purposes of applying the statutory definitions of both wages and tipped employee. *Id.*

7

15. Under the FLSA and its regulations, the tip pool operated by Chez Zee is entirely valid and lawful. Plaintiffs' claims and allegations challenging the tip pool operated by Chez Zee are without merit, and this lawsuit should be dismissed with prejudice.

**F.  Plaintiffs Cannot and Should Not Be Permitted to Pursue a Claim Predicated Upon Their Claimed Informal Practice of Sharing Tip Money With Co-Workers.**

16. Although there is no pleading supporting any other claim or allegation, Chez Zee anticipates that Plaintiffs may attempt to recharacterize the nature of their claims in this lawsuit. In particular, the testimony of Clennon and Dini indicate that their real complaint is not about the tip pool that is actually the subject of their pleadings; but, rather, arises from their claimed participation in an informal practice of taking cash out of their own pocket after the end of their shift, after being paid by Chez Zee, and sharing some of that money with one or more co-workers.[6] For both procedural and substantive reasons, Plaintiffs cannot and should not be permitted to pursue a claim based upon their alleged participation in such an informal practice or custom.

*(i)  Plaintiffs have no pleading supporting any claim based upon their claimed practice of giving part of their tips to one or more co-workers.*

17. Even affording the most expansive reading possible to the First Amended Complaint, it simply does not raise any issue concerning any practice or custom by which Plaintiffs, or any other servers, shared tip money **already paid to them by Chez Zee** with other co-workers. Rather, Plaintiffs' pleading quite clearly alleges that Chez Zee operated a tip pool whereby "servers were required to pay a percentage of their tips **to Defendant, which would then distribute that portion of tips** to employees who do not customarily and regularly receive tips," and alleges that "Defendant required Plaintiffs and its other servers to contribute a percentage of their total sales during each shift (2-3%) **to a tip pool controlled by Defendant**

---

[6] There is a bartender and an expeditor at work on virtually every shift. Generally, a silverware/napkin roller would work on a busy Sunday brunch shift.

8

HOU:2756633.4

**[and] Defendant would then distribute the tip pool** to kitchen staff and other employees." *See* Plaintiffs' First Amended Original Collective Action Complaint at ¶¶ 3 & 10 (emphasis added). Plaintiffs' allegations and claims are clearly directed at the actual tip pool that Chez Zee operated to redistribute a portion of the servers' tips to the table bussers, and do not address their claimed, undocumented, personal practice of sharing tip money that has been paid to them by Chez Zee with follow employees.

18. The deadline for Plaintiffs to amend their complaint has passed, and discovery in this case has taken place in reliance upon what Plaintiffs have, and have not, pled in this lawsuit. Even after Clennon and Dini testified that the tip pool operated by Chez Zee only benefits the table bussers, and that they have no complaint concerning the tip pool, Plaintiffs and their counsel did not seek leave to amend their pleading to either drop their challenge to Chez Zee's actual tip pool, or to pursue any other claim, including any claim based upon Plaintiffs' claimed participation in the informal practice of sharing tips already paid to them by Chez Zee with one or more of their co-workers. Both Chez Zee and this Court are entitled to rely upon the claims actually pled by Plaintiffs, and Plaintiffs should not be permitted to resist summary judgment by asserting any claims that are not currently set forth in their last pleading.

19. Because Plaintiffs have never made any allegations, or asserted any claims, based upon their claimed practice of giving money, out of their own pockets, after being paid by Chez Zee, to one or more co-workers, they should not be allowed to do so now in an effort to avoid summary judgment.

*(ii)    Plaintiffs' claimed practice of paying part of their tips to one or more co-workers was their own decision for which Chez Zee has no possible liability.*

20. Even if it were the subject of a proper pleading, Plaintiffs' claimed practice of sharing cash, out of their own pockets, with co-workers simply does not, logically or legally, give rise to a claim under the FLSA. Once the tips owing to Plaintiffs are paid to them in cash

9

by Chez Zee at the end of their shifts, that money belongs to each of the Plaintiffs, and each Plaintiff is free to do whatever they wish to do with it – including giving some of it to co-workers.[7] Although the practice of sharing tips with others may be common, it is not mandated or required by Chez Zee. Indeed, Clennon confirmed, during his deposition, that no manager from Chez Zee ever told him that he "had to tip either of those two positions, the expeditor or the silverware roller" *See* Clennon Depo at p. 91.

21. After sitting through Clennon's deposition, Dini testified and attempted to suggest that he had been told by one or more managers to tip expeditors and other employees. However, when questioned about such instructions, he could only recall two such instances, and his testimony clearly reveals that he was not, in fact, compelled to tip anyone, and that his supposed participation in such a practice was a voluntary decision that he made using his own money.

22. Dini first described one instance when he and a fellow server were arguing with two expeditors about sharing a portion of their tips with those expeditors. *See* Dini Depo at pp. 92-93. According to Dini, as the argument continued, one of the expeditors reportedly tapped one of the shift managers, Sarah Bown, on the shoulder, and complained. *Id.* According to Dini, Bown had not been privy to the dispute, and he and Bown then engaged in the following brief discussion:

> Q: And Sarah says what?
>
> A: Stop starting trouble, pay them their money.
>
> Q: Okay. And what did – did you respond or Carney respond?
>
> A: Neither one of us responded. Actually – excue me. I was the one that responded to her after that then that's what ended the conversation.

. . . . . . .

---

[7] The regulations enacted under the FLSA recognize the difference between a "pooling arrangement whereby redistributes the tips to the employees" and an informal arrangement whereby "employees practice tip splitting." *See* 29 CFR § 531.54.

10

HOU:2756633.4

> Q: And then you said: "well, when you start paying them that's when I'll tip them" or something like that?
>
> A: No. I said, "when you pay them an hourly rate, then you can tell me how much to take of **my money** to give to them."

*Id.* at pp. 94-95 (emphasis added).

23. According to Dini, Bown then walked off, and he and his fellow server walked off without sharing any of **their money** with the two expeditors. *Id.* at p. 95. Bown testified that she did not recall any such argument, and would never have told Dini to tip anyone. However, even crediting Dini's testimony, his response to Bown amply illustrates that he understood that the money was his money, and that it was his personal decision as to whether he was going to share his tips with anyone else.

24. Dini next related an instance when he received an extremely large tip from a customer whom he assisted in carrying a cake order out to his vehicle, and the manager on duty suggested that the "right thing" would be to share some of the tip with the co-workers who had helped him in fulfilling that order. *Id.* at pp. 100-101. According to Dini, however, he refused to do so, and kept the tip entirely for himself. *Id.* Again, Dini's own words and actions reflect that he understood that the tip money was his, and that he was under no compulsion to share his tips with anyone.

25. Clearly, the two instances described by Dini involved suggestions, not orders or instructions, made by management personnel – one to resolve an argument and one to do the "right thing" – and in both instances, Dini declined to accept the suggestions, and by his own admission suffered no discipline or repercussions as a result of exercising his own free judgment about what to do with his own tip money. *Id.* at p. 102.[8]

---

[8] Specifically, Dini was asked and testified as follows:

> Q: Okay, and just so we're clear, you didn't get disciplined because of that, there were no repercussions because of that, correct?

11

26. Just as Dini exercised his own personal judgment in deciding **not** to share his tips on these two occasions, he, Clennon and other servers exercised their own personal judgment when they **did** share tips. Regardless of what personally motivates any individual server to share some amount of his tips – i.e., because they think it is the right thing to do, because they want to ensure a good working relationship – the fact is that each server who engages in such a practice has made a voluntarily decision to give away money that had already been paid to them by Chez Zee.[9]

27. Chez Zee does not collect and re-distribute such tips, and plays no role in these employee-to-employee "transactions." Nor is there any record of whether or when any of these transactions took place, much less how much was given by which server to which co-worker on any particular date. Assuming that the Plaintiffs actually did give part of their tips to one or more co-workers after being paid by Chez Zee, that was, logically and legally, their decision, and Chez Zee had neither the obligation, nor the power, to monitor and control what Plaintiffs and other tipped employees did with their tip money after it had already been paid to them. Ultimately, whether or not to give any money to any co-workers, and, if so, to which co-workers, and how much, is a decision that is made by each server, each day, using his or her own discretion.

28. After Chez Zee lawfully retained a portion of the tips received by each server to fund a tip pool for the table bussers, it paid all of the rest of the tips earned to each server, in

---

        A:      Not that I know of, correct.

*Id.* at p. 102.

[9] As Clennon acknowledged, there are understandable reasons why a server might share a portion of his tip out. The servers are generally the most highly compensated employees in the restaurant, but they rely upon expediters to plate, and sometimes deliver, their food orders; and silverware/napkin rollers to supply them with those items. Without these "support" personnel, they may be less effective in providing service to customers, and may receive a lesser tip. *See* Clennon Depo at pp. 79-80. Thus, aside from altruism, servers have a self-interest in ensuring that they have a good relationship with the support staff, and the easiest way to ensure that type of relationship is often to share a small portion of their tips with these co-workers.

cash, at the end of their shift. Once that money was delivered to the server, it belonged to them, and it was entirely within their discretion as to what to do with that money.

### (iii) *Plaintiffs have no proof supporting their claim that they paid part of their tips to one or more co-workers.*

29.     Third, and finally, because the alleged cash payments to co-workers were made by Plaintiffs and other servers after they had already been paid their tips, Chez Zee had no obligation to, and could not even if it wanted to do so, track and keep records of any money that servers may have given to any bartenders, expediters, silverware/napkin rollers, or other employees. Nor have Plaintiffs produced any records evidencing when to whom and how much they paid to any bartenders, expediters, silverware/napkin rollers, or other employees. Under such circumstances, Plaintiffs cannot show that they were paid in violation of the FLSA.

WHEREFORE, PREMISES CONSIDERED, Defendant Zenith Café Corporation d/b/a Chez Zee respectfully prays that this Court grant this Motion for Summary Judgment, and dismiss Plaintiffs' claims against Chez Zee, and grant Chez Zee its costs and all other relief to which it is justly entitled.

Respectfully submitted,

ANDREWS KURTH LLP

*/s/ Matthew L. Hoeg*
Matthew L. Hoeg
State Bar No. 09772880
Fed. ID No. 8131
600 Travis, Suite 4200
Houston, Texas 77002
(713) 220-4012
(713) 238-7328 [Fax]

ATTORNEY-IN-CHARGE FOR DEFENDANT
ZENITH CAFÉ CORPORATION
D/B/A CHEZ ZEE

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Defendant's Motion for Summary Judgment has been forwarded to counsel of record on this 21st day of January, 2008, via electronic notification [email], as follows:

Richard Burch
Bruckner Burch PLLC,
1415 Louisiana, Suite 2125
Houston, Texas 77002
**Via Electronic Notification (E-Mail)**

Robert Debes, Jr.
Debes Law Firm
17 South Briar Hollow Lane, Suite 302
Houston, Texas 77027
**Via Electronic Notification (E-Mail)**

*/s/ Matthew L. Hoeg*
Matthew L. Hoeg

HOU:2756633.4